We're here on a rescheduling this morning. The docket number is 18-2276, Mirror World Technologies v. Facebook. Mr. Finister, good morning. Good morning. Good morning, Your Honors, and may it please the Court. The Court should reverse summary judgment because the District Court's order is based on an incorrect factual finding that the aggregators in the accused backend systems receive content from Tau. And when you say incorrect, all we would have to decide is that that issue is not properly resolved against you on summary judgment. That is true. There was no evidence below to support it. All of the evidence is directly to the contrary. Facebook does not support that finding or argue in favor of it. That's at pages 58 and 59 of their red brief. There is, but Your Honor is absolutely right. All you have to do is find that the Court improperly weighed evidence and failed to draw all inferences in favor of the non-movement in making that finding. But that finding is absolutely contrary to all of the evidence in the record. And that's most clear, Your Honor, at 2030. So Mr. Bronson was their sole declarant. And their declarant about Tau at 2030, he testified that he did traces on where these queries to Tau came from. And he testifies at 2030, all of the Tau queries that were initiated as like directly in response to rendering my news feed came from the PHP application layer. That's the front end. Can you tell me what lines you're looking at? Yes, Your Honor. Lines 10 through 13. And if you go up to line 1, that's where it says. And does this trace show you whether the query to Tau came or was initiated by an aggregator, part of the accused back end, as opposed to, say, the PHP layer, which is the front end, which is not accused? And then he goes on to say it's all from the back end. Can I just double check something? Are all three patents now expired, or is there still a dispute about one of them?  There was a dispute, I think, in the record about, I don't know, was it the 5 through 7 or something? The 5 through 8? 5 through 8. I'll check, Your Honor. I believe that they are, my recollection is that they are all expired. Thanks. Summary judgment was, so the order is absolutely clear. So what happens when it goes back under your review? So when it goes back. Is there going to be plain construction? Is there pending, what's pending? I assume everything has been dormant in all those cases. It has been dormant, Your Honor. But we're in the middle of discovery. This was a strange posture. It was an early summary judgment in the middle of discovery that was framed by a letter brief asking for permission to file a rifle shot. And so the discovery that we have had was focused on the issues as framed by the letter brief and the motion for summary judgment, which actually was whether Tau was time-ordered, not whether the mainstreams were all-inclusive. But in any event, to answer Your Honor's question, it's going to go back. We'll finish discovery and then actually state our contentions, which have not been done. Southern District of New York does it at the end of the case. We haven't done our expert reports and then go forward with summary judgment. As I recall, the judge, when saying I will allow Facebook to file an early summary judgment motion, also said discovery shall continue, and that was, what, in April. And then the ruling was in early August with discovery supposed to close in September. Did discovery go on until August 11th when summary judgment was decided? My recollection is that we did discovery in connection with the motions for summary judgment, that there wasn't broad discovery beyond that, and then so the discovery period is still open. So you might have to have a resetting of all the dates for that? That's correct, yes. The case was essentially stated. And the claim construction, I know, had been briefed and there were some rulings on it. Is that process complete? So Judge Kuttel has it. So the briefing was complete. The court only made one finding with respect to mainstream and main collection and substream and subcollection, did not otherwise engage in claim construction. His view is we often don't have to, and I'll decide them in connection with summary judgment. So the claim construction briefing was briefed, but the claim construction process, I don't believe, is complete. And there is an issue. In that there are disputes that haven't been resolved? That's correct. So, for example, data unit, which is relevant to some of the new issues raised by Facebook, has not been construed by the court. That is a disputed term. And that has some bearing on, let's call it the information that was discussed at the oral argument in district court, but that was not part of any of the filings that is alleged to come into the back-end system but not enter either of the time-ordered databases. That's exactly right, Your Honor. So with respect to timeline, for example, we put in affirmative evidence showing that every data unit, everything that's written to the timeline, everything that happens on Facebook is written to the timeline DB. In response, the only thing that Facebook has argued on appeal with respect to timeline, we have to distinguish, is the query, that parameters come in to form the query. And that was, as Your Honor said, argued for the first time at oral argument. It was not discussed in the letter brief, the motion, the reply. Is that because you had changed your interpretation of what the claimed computer was in the preamble of the claim? Not at all, Your Honor. In our opposition, we were totally clear that the accused system was the computer system. And that, Your Honor, so in our opposition, that's identified at 1422 in the record where we identified in the opposition the multi-feed and timeline back-end systems. At 1426, we identified those systems. At 1427 in the opposition, we identified the multi-feed having three main components, which are the aggregator, the tailor, the leaves. At 1433, the timeline back-end system comprising the aggregator and timeline DB. Similarly, the Koskinen Declaration, which was filed in support of the opposition, clearly identified at 1496 in the record, paragraph 73, that the timeline back-end system comprises the aggregator and the timeline DB. And at 1483, paragraph 39, that the three components of the accused multi-feed system are the tailor, leaves, and aggregator. That was totally clear in the opposition itself and what was raised in the SIR reply. So their motion originally said we can't meet mainstream because tau is not time-ordered. We said tau is not part of the accused system and doesn't feed into the accused system. In response, they argued that tau is important, and then they raised a new argument about substream. In the SIR reply, we addressed the substream arguments, but Facebook's allegation here in the appeal that they didn't know about the accused system, including the aggregators, until the SIR reply, is plainly false. Thank you for your answer. If I interrupted your answer to Judge Tronto's original question, please feel free to continue answering that. If you remember it. I think you and I are both trying to remember what my question was. So, Your Honor, the timeline, so we presented sufficient evidence. Oh, it was back to the query. The query was the new issue that they raised, and the data unit claim construction does bear, will bear. I'm not sure that quite on the same page. At the oral argument before Judge Koval, there were references to a couple of pieces of information on the newsfeed side and some, I don't know, search criteria or something on the timeline side as being information that came into the system but didn't go into the time-ordered pieces, which would make the time-ordered pieces not mainstream because they wouldn't have included every data unit. And I thought part of your argument was that those two, at least on the timeline side, maybe on the other, I don't know, didn't qualify as data units because of the claim. That's exactly right. Okay. That's exactly right, Your Honor. And we have to distinguish AdFinder and Ego were their arguments with respect to multi-feed. Those only apply to multi-feed. Those do not apply to timeline. Are we allowed to say those words? We are. Thank you. Thank you for the question, but I did confer with Facebook's counsel before. So timeline, their only argument is the search query, and those are not data units. These patents are about a system for organizing in a time-ordered fashion all user documents, all user data, and we present insufficient evidence. I thought on the timeline side they had some information, and now again you'll have to tell me if I can say the relevant words. Let's call them search criteria. Yeah, the search criteria. Certain identification information. Sure. There's not a problem saying those things, but those are just search criteria that are used to form a query against the mainstream. Okay, but you are talking about the same thing. That's right. That's all that they've argued with respect to timeline, and the court didn't mention it either at the hearing or in its order, so there are no findings for this court to review. It didn't do claim construction of data units. The court didn't explore that. I thought Ms. Keefe spent some time in her argument. Ms. Keefe did. She raised it, but the court didn't ask any questions about it, didn't address it. The court's only acknowledgment at the hearing was that it acknowledged that Ad Finder and EGO were not something it had focused on from the briefing because it wasn't in the briefing. He actually didn't address the query at all, the search criteria, and in his order, of course. There's no mention or fact findings regarding the search criteria. So... Is there a dispute between the parties about whether the web tier and PHP on the web tier is part of the front end or the back end? I don't believe so, Your Honor. I believe that it's crystal clear that the web tier and the PHP level are part of the front end. It's not part of the EQ system. And when you say part of the front end, does that mean on the user's device or on some web server or other processor that might be away from the user's device but nevertheless still considered part of the front end? I'm actually not sure. I believe that it is or can be on the user system. It may be different, depending on whether it's the mobile client or the computer client. I actually don't know the answer to Your Honor's question. So the evidence that we presented was sufficient to support a jury verdict that the TimelineDB includes all data units coming into the Timeline back end system. At 1729, their Facebook documents described Timeline as a time-ordered index for all time. At 1504, Dr. Koskinen in his declaration opines applying the claim construction that the TimelineDB is a mainstream. At paragraph 98, that it is a main collection because it stores and is inclusive of all user actions generated or received by the TimelineDB. At 1716, Timeline is described as a back end system. Can I ask you this question before your time runs out? Do I remember right that in the deposition of Dr. Koskinen, he seemed reluctant to give a straight answer about what the systems were that he was considering in deciding whether all the data units in that system were in some time-ordered database? So he did, this was his first time being deposed. He did originally answer that question, and that's at 2527 to 28, lines, page 24, line 21 through 2524. He identifies the computer system is the multi-feed system as described in his declaration, and he points to his declaration. And at 2528, page 27, lines 25 through 28, line 3, he confirms that aggregator is part of the multi-feed system. Then they continue to ask him over and over and over the same question, and he admittedly didn't handle that very well and entered into this refrain. But he did provide that information, and that deposition was after his declaration, which, as I showed you before, clearly identified it. I see that I'm into my rebuttal time. The last issue is the claim construction. The main collection was improperly construed, and the court should remand. We did not admit at the hearing that the main collection is the same as mainstream, as we set forth in our briefing. You admitted that it didn't have, for purposes of the dispute before the court on summary judgment, that it didn't matter, right? I did. I think that actually was a misstatement on my part. So I was focused on the time-ordered issue because that was everything that we had. My mindset in all the briefing going into that hearing was about time-ordered, and so that was my mindset at the time. And with respect to time-ordered, given their new argument, it's true that that difference didn't matter. But collection also doesn't have the every data unit limitation that streamed us. And so I actually misspoke at that hearing. But in any event, based on the claim language, or on our briefing, it should be given its place. Is it open to us, or would it be appropriate for us to say that when Judge Codall said there's no difference, all we should take that to mean is there's no difference given the basis of his ruling. And if we were to disagree with that ruling, the question of claim construction and whether there might be a difference hasn't been decided and needs to be decided. I think that's a fair interpretation, Your Honor. Thank you. Thank you. We'll restore some of that on time if you need it. Before I start, Your Honors, I'd like to simply thank you for rescheduling this hearing. You might see the crutch on the floor. I'm still hobbling. But I do very much appreciate that you let us do this. So thank you very much. With respect to the argument, Your Honors, I think that perhaps the most important thing that everyone's ignoring here is that once a computer system is defined, the parties agree that a stream is inclusive of every data unit received by or generated by that computer system. And that's at Appendix 582 as well as the court's order at Appendix 32 and 33. Here, we moved under CELA text that they had not identified any mainstream in the system that included all such information. The critical factor here is the aggregator. We did not know for certain what that computer system was until their SIR reply, as Your Honors have questioned. We asked Dr. Koskinen multiple times, just tell us what's in that computer system. Not just that he identified somewhere in his papers that there is a multi-feed system, but is that the computer system of the claims? That answer did not become clear until the SIR reply. And similarly, that the timeline system for the computer system for that part also included an aggregator. Therefore, each and every piece of information that comes into that aggregator must be accounted for. It was not and still has not been. In fact... The district court's decision is based on its finding that there's no dispute that the aggregator receives information from the TAO. How do you support that? So, Your Honor, that's easy. The record is exceedingly clear from Mr. Vickery's deposition at Appendix 2599 that when the entire process is instituted, when someone says, I want to look at my newsfeed, they say... I took it actually that that page was not clear about the point that appears to be in dispute, which is whether the information, do you call it TAO or do you say TAO? TAO, yes. That the information from TAO doesn't actually enter the aggregator but is fetched by the front-end layer. Do you agree that PHP is considered part of the front-end layer? Yes, but I think front-end and back-end, just so Your Honors are clear, is a complete red herring. What matters is what's coming into TAO and going out of TAO, whether it's coming... No, I don't think so. I think what matters is what's coming into what they defined in their opposition and then perhaps more clearly in the surreply as the system, the three-piece system, the aggregator, the tailor, and the leaves on the newsfeed side. That's correct, Your Honor, but once you put the aggregator inside your system, you have to account for all of the information that comes into or goes out of the aggregator. You can't say just the back-end information. Maybe I'll put it this way. The page that you're citing, or four pages, I guess, in the Pickering testimony, it seemed to me, said somebody has to make a query and somebody has to get the TAO information, but I don't think those pages say the aggregator receives the information from TAO, and if the aggregator doesn't receive it, then the theory on which Judge Codall relied doesn't work. No, Your Honor. In fact, look at, for example, very specifically, Appendix 2599 at the miniscript, page 50, and this is at lines 15 through 19. It starts, actually, above it at line 11. One of the most important things in generating someone's newsfeed is their list of friends and the pages they follow. That information is queried from TAO. Once this request, this large request structure, is prepared, it's sent to the multi-feed aggregators. That's coming directly from TAO, which then prepare a list of pages and users to query from the main action index. What's happening, and what he's describing, is when you say that you want to look at your newsfeed, the fact that it is you, Judge Taranto, asking to see your newsfeed page, that comes in to the aggregator. The aggregator then says, TAO, I need to know who Judge Taranto is and who his friends are so that we can figure out what to ask the leaves for, and that's exactly what Mr. Vickery is describing. So TAO then sends down an entire list of who you are and maybe things that you like or things that you have been related to. The aggregator, as it says at lines 15 through 19, then uses that information that had been sent to the multi-feed aggregators from TAO. See above it, lines 13 through 14, that information is queried from TAO. The aggregator then uses that information. It can't use the information unless it's in the aggregator. So the aggregator uses the information from TAO in order to formulate a query, which it then sends in to the leaves. Dr. Koskinen, in his declaration, at paragraph 73 at appendix 1496 and paragraphs 88 through 90 at appendix 1501, says that the aggregator in timeline works the exact same way as the multi-feed aggregator. And then Mr. Huang... Hang on, where are you looking at in 1496? So in 1496, paragraph 73, the second sentence, the back end includes a software layer called the aggregator, similar to that of the multi-feed infrastructure. And then three pages later, where he discusses through paragraphs 88 all the way through 90, where he discusses how that aggregator works, he describes the same process that Mr. Vickery described, which is that when timeline is requested, the web server layer receives a message from Facebook's users to query the timeline infrastructure. That process then begins a cascade of functions that eventually results in the aggregator building the query. We know from Mr. Huang's deposition at appendix 25... So just back me up for a minute. Where it says that the aggregator builds a query, are you saying that it builds a query which is then ultimately going to be sent to the TAO by the front... to the TAO? Sorry. One step after that. It can only build the query, just like Mr. Vickery describes. A query can only be built after information from TAO comes down. Who are you? What are the dates that you've used this? That information is then used to build the query that goes into the timeline database to grab all of the right dates and the right parameters. And that's what Mr. Huang is talking about at the section that the court referred to on appendix 2587. On 2587, what Mr. Huang says, he's being asked to agree that TAO doesn't come in, that TAO is not anywhere involved in the timeline system. And Mr. Huang says, that's absolutely not true because, and this is at appendix 2587, page 78, lines 19 through 22, one caveat to that, though, is again, in the life cycle of a request to render timeline, there is information actually that's queried from TAO even before it gets to the aggregator. So what he's saying is, I had to ask TAO for the information to make the query even before it gets to the aggregator so that the aggregator can ask for the remainder of the information. That's exactly... There are certain graphics and different, it's different testimony, including some of the testimony cited by opposing counsel today that suggests that it's the front end that reaches out and communicates with TAO. How do you respond to that? So the first thing, Your Honor, is that's the only part that they're describing there. And the information that Mr. Fenster was describing in page 2030, that's the last part. That's after you've received the information from the timeline database or from the leaves. How do you show it to the user? So that's the end of the process. And I will agree that that information does potentially, it does query TAO, and it's a little bit unclear whether TAO passes it back to the aggregator or whether it passes it to the PHP. But that's not what we're talking about. That's not what the judge was relying on. The judge was relying on the sections where Mr. Vickery and Mr. Fong were saying, before we even get to query that mainstream, that leaves, that timeline database, information came from TAO. And then even more critically, Your Honor, and this is something on which you can't affirm the entire judgment, regardless of what the parties say, is that during oral argument, Mirror World conceded that it cannot prove the negative of whether or not there is information from TAO being fed into the aggregator. That is absolutely fatal to their entire argument because with a claim that requires every data unit that goes into a system be accounted for, they have to prove the negative. So by admitting that he cannot say whether or not TAO feeds into the aggregator, right away, CELATEX applies because he has not demonstrated that there is a system that does not talk to TAO. So right away, we have an admission that demands a CELATEX affirmance of the summary judgment. Doesn't the way that Rule 56 work have a certain kind of, as it has been applied ever since, a certain kind of pragmatic common sense to it? That is, there is the first stage of the movement indicating or pointing to, or if I get what the Rule 56 language is now, I think it was once pointing to, maybe it still is, the reason that there is something crucial missing from the evidence that the other side has the burden of proof of. And there has to be some amount of specificity to that, but it's going to be a very context-specific judgment about whether the specificity requirement is met. And you don't expect the Rule 56 movement to say, you can't prove your case, over to you, particularly when there is a kind of negative thing, negative aspect to what would have to be proved, and then impose the burden on the other side to say in trillions of lines of code, or I forget what the number is, it's a very big number, they have to, even before discovery is finished, show that there is nothing in there that comes into these back-end systems. That doesn't seem very sensible. But it is here, Your Honor. This is something that they chose to accuse, knowing that they had a patent that they could only acquire over the prior art when they said each and every element. We were consistent. We didn't just say, Silatech says you lose. We specifically made the argument that they had not identified a mainstream that included each and every item from the main collection. That's what we said. And we said, you can't do that because everything that's in your mainstream we don't even know what the main collection was, but you certainly didn't identify it. Our theory was consistent the entire time. The only theory that was inconsistent was they had originally drawn the arrow, or the circle if you want to call it, around the Tau back-end as the mainstream and the front-end as what the user sees. That was in their interrogatory response. So we moved on... I'm not quite sure that was in their interrogatory response. We think it was, Your Honor. And in fact, when we had the letter briefing... But then they responded and they were in their opposite... And the only thing you said in your motion was considering Tau as part of it, that there's parts of Tau that are not time-ordered QED. But if you look, Your Honor, again at Appendix 1075, we're very clear. It's not just, there's Tau. We said, you have not identified a mainstream that includes all of the elements that come into or go out of the computer system. One example is Tau. And then we gave one example being Tau. When in their opposition they said, oh, well, that's not exactly what we meant. We're going to draw our circle differently. Then we said, okay, now you haven't identified a substream. Then they asked for a surreply where they said, okay, the computer system finally, we're going to say, does include the aggregator so that it's something broader than the mainstream itself so that they could then have a substream down the road. But it is a zero-sum game. Every time that they redrew what the computer system was in order to make sure that they had a mainstream which could have a substream of units only from that stream, they had to broaden out what the computer system was. And when they did that, they encompassed the aggregator. Once they encompassed the aggregator, they had to account for all of the data from Tau that feeds into the aggregator, which is at Mr. Vickery's deposition, as well as Mr. Huang's, as well as Mr. Koskinen's own declaration, all of the graphics then showing also that even if the court were to say maybe it's not Tau, although we think the record is absolutely clear that Tau does feed in, there's also Ad Finder and Ego that are unrefuted, that they feed into the aggregator and not accounted for. And the dates... That's not the basis for the decision below, right? So, Your Honor, it's not mentioned in the court's order, but the judgment... Why would we do that? Because, Your Honor, the court has very clear case law that, in fact, you can affirm a judgment on any record evidence. And so this is the Rexnard Industries v. Kapos case. So even if it weren't in Tau, Ego, Ad Finder, Name Params, those are all undisputed. It's also undisputed that queries, despite what we've heard today here in argument, actually do include, quote, tons of information. And this is documents produced and used... Not produced, used and cited by Koskinen, and that's at Appendix 2167. But I do think that, Your Honor, the record is incredibly clear that Tau is feeding into the aggregators in order to even start the query. Everything that Mr. Fenster talked about when Mr. Bronson was talking about it was just how do you then build the page after all of that has happened. You can't ignore the front end, and I don't mean front end that way. I mean, you can't ignore the beginning of the process and focus only on the end of the process. Can I just ask you, where in your red brief do you specifically defend the basis of the district court's decision? That is, that there is information from Tau that's coming into the aggregator. I'll just grab my copies of the brief here, Your Honor. Because I guess I'm remembering the brief as essentially proceeding on a couple of alternative grounds and then saying 58 to 61, there was no material error by the district court, which doesn't say there was no error by the district court. It's just that since we have other grounds, you don't need to care about those. Yes, so Your Honor wants to know, on page 45 of the red brief, we specifically talk about how Mr. Vickery's testimony, unrebutted, does support that the aggregator receives information from Tau, which does, in fact, support his honor's decision, as well as the information on page 46. But 45's talking about other sources, not Tau. That's correct, Your Honor, but it also is talking about that entire segment of Mr. Vickery's testimony about the fact that information is received from Tau, and that goes on to page 46, through the large request structure, which is the language that I just quoted to you, Your Honor, so we are supporting it there as well. Thank you. I see I'm out of time. If Your Honor has no other questions. Thank you. I appreciate your time. Can you talk to us about 2599 Vickery, subpage 50? Sure. So, Your Honor is absolutely correct that what he's talking about there, one, is query, and two, he's talking, he never... Let me just see if I can... Here's what I understood Ms. Keefe to say, that before there's a formulation of a query by the aggregator, the aggregator needs to get information from Tau to formulate the query, and then maybe once it's formulated, the PHP sends it and receives the information for the front end, and the information in response to the query, perhaps, doesn't come into what you now define as the system, but information from Tau needs to come in to formulate the query. So, Vickery... That's what I think she was saying. I think that is what Ms. Keefe is saying, but Mr. Vickery's testimony is not so clear. So, what the evidence actually shows is that it's the front end that may receive information from Tau and then formulate the query and send it on to the aggregator. So, the data that they're talking about in the form of data that will be used to form the search query is coming actually from the front end. Are you looking specifically at page 2599? No, 2599 doesn't actually show that, Your Honor. But that's the page that... Later on, page 193 and whatnot of the transcript is, I don't know, let's call it better for you, but I think she quite rightly, Ms. Keefe, quite rightly focused on this page, and I guess I'd like you to explain why this page, even if just considered alone... No, no, we don't consider it alone. It doesn't say what she says it says. So, this page doesn't say that the aggregator is receiving information from Tau. What about where it says, once this request, once this large request structure is prepared, sent to the multi-feed aggregators? Look at lines 15 through 17. And... It's sent. It doesn't say it's sent by Tau to the multi-feed aggregator. So, where it's actually sent from, and these are the user data, you can see this in the figure at 2422. That's the diagram that actually shows the user data coming in from the front end to the aggregators. 2422. Okay, so it's actually coming from the front end, but that is just the query. And the query, the search query, is not user data, it's not data units that have to be construed, and that was not the basis of the court's order. The court's order was the content that's actually indexed, and this is at 42. It says, then the multi-feed aggregator receives the actual data that was indexed on the multi-feed leaves from Tau to satisfy the query. Judge Kodal's order was not talking about the new query parameters argument that Facebook is raising on appeal, which was raised for the first time at oral argument. The order is clear that they're talking about the content that is indexed, and that content, as Ms. Keefe acknowledged to you... But it's the actual data that was indexed. The actual data that was indexed. And Ms. Keefe acknowledged to you that that is not received by the aggregators. She said she didn't know it may have been. But there's no evidence in the record to show that it is, and Facebook hasn't presented any. So the court's order is absolutely clear that it's the actual data that was indexed that has to be... that he says was pulled into the aggregators from Tau. There's no support for that. Facebook acknowledges as much. Now they're talking about the query. The query parameters are not the proper basis to affirm because it wasn't raised in either of the... Do I remember correctly this particular page, page 50 of the victory, that was in Facebook's footnote number four in its reply that says... And what I don't remember is Judge Kodal, did he cite this page? Cited page 16? He does reference page 50. This is at page 39 of the appendix where he says multi-feed aggregator draws the actual content that is indexed. He relies on page 50, he cites page 50, but page 50 doesn't support him. We go through in our opening brief at pages 50 to 55 refuting very carefully every one of the judge's sites and why it doesn't support that order. Ms. Keefe's argument that Ad Finder and Ego feed into the system being unrebutted, that is absolutely not true. They were not raised in the motion. They were not raised in the reply. They were mentioned only at oral argument. The judge... That's not inconsistent with their being unrebutted. It just may mean that you're not to be... It's not... ...dinged because they're unrebutted because it came up too late. And there's no evidence. All they did was present attorney argument about this figure that has a line between Ad Finder and Ego to the aggregator, but there's no testimony about that. There was no evidence, and the reason for that is because it was an early motion for summary judgment that wasn't part of what they framed as their motion. So there isn't any testimony in the record. There are no findings by Judge Codal for the court to review, nor is there the underlying claim construction of data units for the court to review and comparing those two. Because we presented sufficient evidence to support a jury verdict, and because the court's order is undisputably based on bad fact-finding that was contrary to the summary judgment standard of drawing all entrances in favor of the non-moving, we ask the court to reverse the ruling. Thank you. We thank both sides for cases submitted that concludes our proceedings.